IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DAVID MCDANIEL, RAUL SOLIS III, AARON AULD, JUAN A. BUSTAMANTEJR., JESUS E. FLORES, RON JONES, MARIO MUNOZ, FERNANDO RICHARD, LARRY STANLEY, TONY G. ALANIZ, SHELDON ANDERSON, MIKE DAFFRON, LUIS GOMEZ, VICTOR M. JUAREZ, EDWARD SAN MIGUEL, WILLIAM R. STOLZ, JUAN J. PENA, AARON ROBERGE, SERGIO ALVAREZ, ANDIE CRUZ, ROEL BARRERA, TRACY WOODSON, HERMAN CRUTCHER, LARRY WILHELM, TOBY B. LEDOUX, JESSE VERA, PEDRO GALLEGOS, BRUCE A. JOHNSON, HANK MOSER, BURTON BIENVENUE, ROBERT D. TAYLOR, RYAN BENN, LARRY D. CHEATWOOD, | § § § § § § § § § § § § § § § § § § § § § § § § | SA-19-CV-01194-FB |
| *Plaintiffs,* | § § § | |
| vs. | § § | |
| CRESCENT DRILLING AND PRODUCTION, INC.,  CRESCENT DRILLING FOREMAN, INC., | § § § § § | |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendants Crescent Billing and Production, Inc. and Crescent Drilling Foreman, Inc.'s Motion to Compel Arbitration for Opt-In Plaintiff Jesse Vera [#144]. All dispositive pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C.

§ 636(b)(1)(B).  In issuing this recommendation, the undersigned has also considered Plaintiffs' Response in Opposition [#144] and Defendants' Reply [#152].  For the reasons set forth below, it is recommended that Defendants' motion be **GRANTED**.

## I.  Background

This is a collective action to recover unpaid overtime compensation, arising under the Fair Labor Standards Act, 29 U.S.C. 216, *et seq.* ("FLSA").  Plaintiffs John Hoeflein, III, and Raul Solis, III, were opt-in Plaintiffs in a lawsuit filed by Kevin Langen against Defendant Crescent Drilling & Production, Inc.  *See* SA-19-CV-00320-FB.  Langen's case had been referred to the undersigned for all pretrial proceedings.  After Langen unexpectedly died, the Court severed Hoeflein's and Solis's claims from Langen's and opened this new cause of action. The case was automatically referred to the undersigned upon its opening.

Hoeflein and Solis filed an Amended Complaint, alleging that Defendant Crescent Drilling and Production and Crescent Drilling Foreman, oilfield project management companies providing staff to the oil and gas industry (collectively "Defendants"), are a joint enterprise that employed Plaintiffs as oilfield workers, misclassified them as independent contractors, and paid them a day rate with no overtime compensation.  Plaintiffs moved to conditionally certify a class of oilfield workers, and the Court granted the motion in part, ordering that the following class of employees receive notice of this lawsuit and the opportunity to opt-in as Plaintiffs:

> All oilfield workers who provided services to or on behalf of [Defendants] and were staffed to Sanchez Oil & Gas Corporation or Pioneer Natural Resources Company during the past 3 years who were classified as independent contractors and paid on a day-rate basis with no overtime.

(Order [#43] at 3.)

After the class was certified, Defendants filed objections with the District Court, arguing that the Court should have excluded from the class those workers who agreed to arbitrate their

wage-and-hour disputes with Defendants per the Fifth Circuit's directive in *In re JP Morgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019).   The undersigned held a hearing; Defendants withdrew their objections; and the Court agreed that the notice issued in this case should exclude all individuals who signed valid arbitration agreements with Defendants.  (Order [#56] at 2–3.) The Court gave Defendants four weeks to provide Plaintiffs with a list of its former workers who fit the class definition and who did not execute an arbitration agreement.  The Order also stated that "[i]f after four weeks of reviewing their records, Defendants determine that they are uncertain whether a certain worker executed a valid arbitration agreement, that worker's name should be included in the list produced to Plaintiffs." (*Id.* at 3.)

Defendants provided their list to Plaintiffs; notice was issued; and various individuals have filed consents to join this suit.  Hoeflein subsequently withdrew his consent to proceed as a Plaintiff in this case, and the Court granted Plaintiffs leave to file a Second Amended Complaint substituting David McDaniel as a new lead Plaintiff.  (Second Am. Compl. [#142].)  Various discovery disputes have arisen over the course of this litigation, and the Court recently extended the discovery deadline to allow the parties to complete the depositions of several Plaintiffs and exchange documents needed for those depositions.

Defendants have now filed a motion to compel arbitration as to Jesse Vera, one of the Plaintiffs who has consented to join this suit.  (Consent [#72].)  Defendants represent that Vera entered into a valid and enforceable agreement to arbitrate his FLSA claims, but Defendants did not discover the agreement until January 5, 2021.  Plaintiffs refuse to voluntarily dismiss Vera's claims and oppose the motion, arguing Defendants have waived their right to invoke the arbitration agreement.  The Court held a hearing on February 22, 2021, at which the Court heard argument on Defendants' motion to compel arbitration, among other pending motions.

3

## II.  Analysis

The Court should grant the motion to compel arbitration, compel Vera to arbitrate his claims against Defendants, and sever and dismiss him from this lawsuit.

**A.      Vera executed a valid arbitration agreement.**

Defendants have produced an arbitration agreement signed and executed by Vera on November 5, 2008, in conjunction with his work for Defendants.  (Arbitration Agreement [#144-1] at 5–14.)   This "Mandatory Arbitration Agreement" applies to "all disputes, legal and equitable claims, demands, or disagreements of whatever nature or kind, whether in contract, tort, under statute or regulation, or any other law or source of legal obligation . . . including allegations related to minimum wage and overtime pay." (*Id.* at 11.)

The Fifth Circuit has established a two-step inquiry in determining whether the parties have agreed to arbitrate a claim.  "The first is contract formation—whether the parties entered into *any arbitration agreement at all*.  The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement."  *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original).  In the absence of a valid clause delegating the threshold issue of arbitrability to the arbitrator, both steps are questions for the Court.  *Id.*  However, where the parties' contract delegates the question of arbitrability to the arbitrator, a court possesses no authority to decide whether the parties' dispute falls within the scope of the agreement.  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, ---U.S.---, 139 S. Ct. 524, 529 (2019).

Although there is a strong presumption favoring arbitration, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *TRC Envtl. Corp. v. LVI Facility Servs., Inc.*, 612 Fed. App'x 759, 762 (5th Cir. 2015).  Hence,

the party moving to compel arbitration bears the initial burden of proving the existence of a valid agreement to arbitrate.  *See Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018). Once the moving party has met its initial burden, the burden shifts to the party resisting arbitration to assert a reason that the arbitration agreement is unenforceable. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).

The arbitration agreement at issue in this case expressly references the Federal Arbitration Act ("FAA), 9 U.S.C. § 1, *et seq.*, and the agreement evidences a transaction involving interstate commerce.  (Arbitration Agreement [#144-1] at 11.)  Accordingly, the FAA applies here.  *See* 9 U.S.C. § 2 (FAA applies to written arbitration agreements in contracts "evidencing a transaction involving commerce").  "Section 2 of the FAA provides that written arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"  *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996) (quoting 9 U.S.C. § 2).  "[A]s a matter of federal law, arbitration agreements and clauses are to be enforced *unless* they are invalid under principles of state law that govern all contracts."  *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004) (emphasis in original) (interpreting Section 2).  Thus, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2."  *Casarotto*, 517 U.S. at 687.

Plaintiffs do not dispute that Vera entered into the arbitration agreement produced by Defendants and concede that it was a valid agreement at the time it was entered.[1]  The arbitration agreement provides that it is to be construed in accordance with Louisiana law.  (Arbitration

---

[1] At the hearing Plaintiffs argued that the agreement is "invalid" now due to waiver, but the validity of the agreement and waiver are distinct issues.

Agreement [#144-1] at 12, § 6.)  The contract evinces the intent of Vera to resolve his disputes related to his employment with Defendants through binding arbitration.  *See Lagraize v. Basler*, 304 So.3d 102, 110 (La. Ct. App. 2020) (discussing contract formation and requirement of mutual assent under Louisiana law).

Plaintiffs' opposition to the motion to compel arbitration is based on the defense of waiver.  Plaintiffs argue that because Defendants included Vera in the list of Plaintiffs to receive notice in this case (i.e., as an individual who had not signed an arbitration agreement), they have taken action in this case inconsistent with their right to demand arbitration and they must assent to this forum.

Defendants contend that all issues related to whether the arbitration agreement is ultimately enforceable and whether the parties' dispute falls within the scope of the agreement is an issue of arbitrability that has been delegated to the arbitrator.

**B.      Although the arbitration agreement contains a delegation clause, this Court should decide the defense of waiver.**

The arbitration agreement at issue requires the arbitration to be conducted in accordance with the Employment Arbitration Rules of the American Arbitration Association ("AAA"). (Agreement [#144-1] at 12, § 5.)  Rule 6(a) of the AAA Employment Arbitration Rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objection with respect to the existence, scope or validity of the arbitration agreement."  *See* Employment Arbitration Rules and Mediation Procedures, *available at* https://adr.org/sites/default/files/EmploymentRules_Web_2.pdf (last visited Mar. 1, 2021).  The Fifth Circuit, quoting this rule's language, has held that the "express adoption of [AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012).

Accordingly, the parties here have agreed to delegate the ultimate question of the arbitration agreement's enforceability and scope to the arbitrator. In such circumstances, this Court's role is "strictly limited," and the Court "must refer the claim to arbitration absent some exceptional circumstance." *Kubala*, 830 F.3d at 203–04.

However, the Fifth Circuit has considered litigation-conduct waivers, which is what Plaintiffs allege here, to be an external legal constraint and an issue that is for the courts, not the arbitrator, to decide. *See Vine v. PLS Fin. Servs., Inc.*, 689 Fed. App'x 800, 803–04 (5th Cir. 2017); *Tellez v. Madrigal*, 292 F. Supp. 3d 749, 754–56 (W.D. Tex. 2017) (applying *Vine*). This is because such waivers implicate "courts' authority to control judicial procedures or to resolve issues . . . arising from *judicial conduct*," and thus, parties would expect courts to decide such issues. *Vine*, 689 Fed. App'x at 803 (quoting *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 219 (3d Cir. 2007) (emphasis in original)). The presumption that courts decide the issue of litigation-conduct waiver may be displaced if the delegation clause contains "clear and unmistakable evidence" of the parties' intent to arbitrate this issue specifically. *Id.* There is no such evidence here. Accordingly, the Court should decide the waiver issue.

## C.     Defendants have not waived their right to arbitrate Vera's claims.

In the Fifth Circuit, "[t]here is a strong presumption against finding a waiver of arbitration, and the party claiming that the right to arbitrate has been waived bears a heavy burden." *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004). "Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Id.* (internal quotation and citation omitted). "To invoke the judicial process, the party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than

arbitration." *Id.* (internal quotation and citation omitted).   Further, "a party only invokes the judicial process to the extent it litigates a specific claim it subsequently seeks to arbitrate."   *Id.* (internal quotation and citation omitted).

There is no support for Plaintiffs' position that the mistaken inclusion of Vera on the list of workers who fall within the definition of workers who should receive notice in this case constitutes waiver.   The Court's Order regarding Defendants' obligation to provide Plaintiffs with this list recognized the possibility that it might take more than four weeks to locate certain arbitration agreements and directed Defendants to include those workers in the notice list even if they were uncertain about whether or not the worker had signed an agreement to arbitrate.   (*See* Order [#56] at 2–3.)   Defendants' mere compliance with the Court's Order regarding notice procedures and service of representative discovery to Vera and other opt-in Plaintiffs, does not constitute the substantial invocation of  the judicial process by Defendants to Vera's detriment or prejudice.   Defendants promptly notified Plaintiffs when they discovered Vera's arbitration agreement and then quickly moved to compel arbitration when Plaintiffs refused to voluntarily dismiss Vera's claims.   The Fifth Circuit has refused to find waiver of the right to arbitrate where a defendant discovered an arbitration agreement after 10 months of litigation and promptly moved to compel arbitration after the agreement was discovered.   *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661 (5th Cir. 1995).   The same result is compelled here.

Defendants have repeatedly expressed a desire to arbitrate the claims of all potential opt-ins who signed valid arbitration agreements.   Plaintiffs have not identified any prejudice to Vera due to his inclusion in this litigation thus far.   Vera has not been deposed.   Vera may have had to respond to some written discovery, but that, on its own, is not enough to establish prejudice or constitute an overt act by Defendants inconsistent with the right to arbitrate, especially in the

context of a collective, as opposed to an individual action.  *See Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 578 (5th Cir. 1991) (13-month delay involving minimal discovery did not prejudice plaintiffs such that defendant waived right to arbitrate).

**D.     Vera should be dismissed from this case.**

"The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration."  *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (emphasis in original) ("Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose.").   Because all of Vera's claims must be submitted to the arbitrator, Vera should be severed from the case, compelled to arbitrate his claims, and his claims should be dismissed.

## III.  Conclusion and Recommendation

Having considered Defendants' motion, the response and reply thereto, the governing law, and the arguments of the parties at the Court's hearing, the undersigned recommends that Defendants Crescent Billing and Production, Inc. and Crescent Drilling Foreman, Inc.'s Motion to Compel Arbitration for Opt-In Plaintiff Jesse Vera [#144] be **GRANTED**.  The Court should compel Vera to arbitrate his claims against Defendants, sever him from this lawsuit,  and dismiss his claims against Defendants.

## IV.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.   Written objections to this report and recommendation must be

filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 1st day of March, 2021.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE

10