**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| FRITZ JOHN HOEFLEIN, III and RAUL SOLIS, III, individually and on behalf of all others similarly situated, | ) ) ) ) ) | Civ. Action No. 5:19-cv-01194-FB-ESC |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CRESCENT DRILLING AND PRODUCTION, INC. and CRESCENT DRILLING FOREMAN, INC., | ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS CRESCENT DRILLING AND PRODUCTION, INC. AND CRESCENT DRILLING FOREMAN, INC.'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF RAUL SOLIS III

**TABLE OF CONTENTS**

I.      STATEMENT OF UNDISPUTED FACTS ......................................................... 2

    A.    Crescent's Business ................................................................................ 2

    B.    Raul Solis's Contract Relationship With Crescent For Invoicing Services.............. 2

    C.    Solis's Skills were Critical to His Contract Services For Sanchez ........................... 3

    D.    As an Independent Businessman, Solis Maximized His Profits Through His Investment in His Company, Black Bull Oil and Gas Services LLC ...................... 5

II.     LEGAL STANDARD .................................................................................. 6

III.    ARGUMENT .............................................................................................. 7

    A.    Crescent is Entitled to Summary Judgment on Solis's FLSA Claim Because Solis was an Independent Contractor .................................................................... 7

        1.    Crescent Did Not Exercise Any Control Over Solis ......................................... 8

        2.    Solis's Investments Outweighed Crescent's Investments ................................ 11

        3.    Solis Controlled His Own Opportunity for Profit or Loss .............................. 12

        4.    Solis is a Highly Skilled and Qualified Consultant .......................................... 14

        5.    Solis Worked on a Project-to-Project Basis with no Guarantee of Future Work ................................................................................................................ 16

        6.    Solis and Crescent Executed an Independent Contractor Agreement ............. 17

        7.    Industry Standard ...................................................................................... 18

    B.    Solis's FLSA Claims are Time-Barred Because They Accrued More Than Two Years Before His Complaint was Filed ................................................................. 19

    C.    The Three-Year Limitations Period Does Not Apply Because Solis Cannot Carry His Burden of Showing a Willful Violation of the FLSA ...................................... 19

IV.    CONCLUSION ......................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Boudreaux v. Swift Transp. Co.*,
   402 F.3d 536 (5th Cir. 2005) ...................................................7

*Carrell v. Sunland Const., Inc.*,
   998 F.2d 330 (5th Cir. 1993) ..................................... *passim*

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).................................................................6

*Clay v. New Tech Glob. Ventures, LLC*,
   2019 WL 1028532 (W.D. La. Mar. 4, 2019) ...................11

*Gate Guard Servs. L.P. v. Solis*,
   No. V-10-91, 2013 WL 593418 (S.D. Tx. Feb. 13, 2013)..........................10, 17, 18

*Halferty v. Pulse Drug Co.*,
   821 F.2d 261 (5th Cir. 1987) ................................................19

*Hendrix v. Yazoo City*,
   911 F.2d 1102 (5th Cir. 1990) ..............................................19

*Hopkins v. Cornerstone Am.*,
   545 F.3d 338 (5th Cir. 2008) ................................................12

*Ikossi–Anastasiou v. Bd. of Supervisors of La. State Univ.*,
   579 F.3d 546 (5th Cir.2009) .................................................20

*Mack v. Talasek*,
   No. V-09-53, 2012 WL 1067398 (S.D. Tx. Mar. 28, 2012)............................10, 17

*Martin v. PepsiAmericas, Inc., No. 1:07cv91-SA-JAD*,
   *2008 WL 4755394 (N.D. Miss. Oct. 28, 2008)* ......................................20

*Mohnacky v. FTS Int'l Servs., LLC*,
   No. SA-13-CV-246-XR, 2014 WL 4967097 (W.D. Tex. Oct. 2, 2014)...............................20

*Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*,
   783 F.3d 527 (5th Cir. 2015) ..................................................7

*Parrish v. Premier Directional Drilling, L.P.*,
   917 F.3d 369 (5th Cir. 2019) ..................................... *passim*

*Reich v. Bay, Inc.*,
    23 F.3d 110 (5th Cir. 1994) ...................................................................................20

*Thibault v. Bellsouth Telecommunications, Inc.*,
    612 F.3d 843 (5th Cir. 2010) ......................................................................... *passim*

*Trent v. Wade*,
    776 F.3d 368 (5th Cir. 2015) .....................................................................................6

*United States v. Silk*,
    331 U.S. 704 (1947).........................................................................................7, 15, 18

*Usery v. Pilgrim Equip. Co.*,
    527 F.2d 1308 (5th Cir. 1976) ..................................................................................16

*Villegas v. Dependable Const. Serv. Inc.*,
    No. 07-cv-2165, 2008 WL 5137321 (S.D. Tx. Dec. 8, 2008) ................................20

## Statutes

29 U.S.C. § 255(a) ............................................................................................................19

Fair Labor Standards Act ...............................................................................7, 8, 19, 20

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants Crescent Drilling and Production, Inc. and Crescent Drilling Foreman, Inc. (collectively, "Crescent") move for summary judgment on the FLSA claims of the only remaining plaintiff in this action, Raul Solis III ("Solis").

The undisputed record evidence  conclusively establishes that Solis was an independent contractor, and not an employee, under the Fair Labor Standards Act.  This case is on all fours with *Parrish v. Premier Directional Drilling L.P.*, 917 F.3d 369 (5th Cir. 2019), in which the Fifth Circuit reversed and rendered judgment against a sophisticated, high-level oilfield consultant (directional driller) who claimed that he had been misclassified as an independent contractor. Like the plaintiffs in *Parrish*, Solis was also a consultant, but he was at an even higher level (Lead Operator) than the directional drillers in *Parrish* because he was in charge of a team of six and oversaw production for 71 wells and 32 pads. Like the plaintiffs in *Parrish*, Solis was an independent and highly skilled worker who established an LLC through which he was paid and for which he filed taxes and took tax deductions for business expenses, was free to accept or reject jobs, signed a contractor agreement, and operated autonomously and without any direction from or control by Crescent. Indeed, the indisputable facts show Solis ***is even more economically independent than the directional drillers in <u>Parrish</u>*** because he found his consulting work through his business relationships (not Crescent) and simply contracted with Crescent for invoicing services.

This case also is ripe for dismissal because Solis's claims are time-barred because he filed this action more than two years after his relationship with Crescent ended.  He cannot extend the statute of limitations to three years in order to save his three month claim for overtime because he is unable to meet his heavy burden of showing that Crescent willfully misclassified him.

1

The record in this case, consisting primarily of sworn admissions by Solis, strongly supports dismissal of his FLSA claims.  As there is no genuine issue of material fact warranting a trial, Crescent respectfully requests that this Court grant its Motion for Summary Judgment.

## I.    STATEMENT OF UNDISPUTED FACTS

### A.    <u>Crescent's Business</u>

Crescent contracts with independent contractors (referred to as "consultants") such as Solis to process their invoices for the services they perform for Crescent's customers, who are primarily oil and gas operators. (Ex. 1, Dec. of L. Ligori [ECF No. 19-1] at ¶ 4). Crescent acts as an invoicing company and for some consultants, a staffing company. (Ex. 2, Dec. of S. McDonald [ECF No. 221-1] at ¶¶5-6). Certain consultants, like Solis, already have a relationship with operators and "bring the work" to Crescent, and in other cases Crescent acts as the middle man, connecting independent consultants with different operators on a project-to-project, as needed basis.  (*Id.* at ¶ 7). Independent consultants choose to sign up with Crescent because their invoices are paid faster and they do not have to deal directly with the operator's requirements.  (*Id.* at ¶ 8).  Operators prefer to use invoicing companies for independent consultants so they can more efficiently process the invoices in bulk to one payee rather than numerous consultants.  (Ex. 2 at ¶9). In essence, independent consultants, such as Solis, who are performing work for operators, sell their invoices at a discount to Crescent, who then bills the operator the full amount for the consultant's services. (*Id.* at ¶¶5-10; Ex. 3, Solis Dep. at 91:16-25).   The discount at which a consultant sells his invoice to Crescent is called the "split", and consultants, such as Solis, pay the "split" to Crescent in exchange for Crescent's administrative services in processing invoices.  (*Id.* at ¶ 10).

### B.    <u>Raul Solis's Contract Relationship With Crescent For Invoicing Services</u>

Solis performed consulting services for operators in the role of a "Lead Operator" during the production phase of the operation. (Ex. 3, Solis Dep. at 142:16-18, Ex.4 Solis Resume *[Solis*

2

*Dep. Ex. 1*]). He has about 25 years of experience in the oilfield, including ten years as a Lead Operator, and many contacts in the oil and gas industry. (Ex. 3, Solis Dep. at 31:17-20; Ex. 4, Solis Resume). In August 2015, prior to Solis's relationship with Crescent, Solis began providing services to Sanchez after Jeremy Nursement of Sanchez offered Solis an assignment. (Ex. 3, Solis Dep. at 40:9-41:5, 42:6-44:13, 49:10-50:14; Ex. 4, Solis Resume).

In September 2016, Solis continued to provide consulting services to Sanchez, but began running his invoices through Crescent.  (Ex. 3, Solis Dep. at 50:15-51:5, 65: 21-23). Solis executed an independent contractor agreement with Crescent on September 20, 2016, and then, following the formation of his company, Black Bull Oil and Gas LLC, he executed a second independent contractor agreement on November 7, 2016.   (Ex. 3, Solis Dep. at 71:13-75:12; Ex. 8, Solis's ICA d/b/a Black Bull Oil & Gas Services LLC [*Solis Dep. Ex. 3*]).[1]   The independent contractor agreement expressly stated that Solis was a contractor and not an employee.  (Ex. 8 at 1) (offering an "independent contractor position" and describing that Solis would "perform work or services hereunder as an independent contractor").   It made clear that Solis had control over the performance of his consulting services, was responsible for incurring the cost of his own equipment to do the work, and was free to reject or accept assignments.  (Ex. 8 at 1) (noting that ICA governs "*[s]hould You accept any assignment*") (emphasis added).

## C.    Solis's Skills were Critical to His Contract Services For Sanchez

Solis provided supervisory services in the role of Lead Operator for Sanchez.  (Ex. 3, Solis Dep. at 142:16-18).   He was responsible for supervising about six individuals, including mechanics, well gaugers, and a well tech. (Ex. 3, Solis Dep. at 142:22-143:24). He testified that his primary consulting role for Sanchez was to monitor and maintain well equipment and ensure

---

[1] Ex. 4, Solis Resume; Ex. 3, Solis Dep. at 52:2-54:10, 142:16-18; Ex. 5, Black Bull LLC Corporate Records [*Solis Dep. Ex. 2*] at HOEFLEIN[Solis] 000149.

that all production facilities were operating properly and at maximum levels for 71 wells and 32 pads.[2] To do this, Solis analyzed production data collected by his subordinates, identified any problems or potential problems in well production, diagnosed what was causing the problem, and either instructed his subordinates to fix the problem or escalated it to the Sanchez Superintendent.[3] As Solis described his duties in his resume, he was "responsible for daily production." (Ex. 3, Solis Dep. at 39:1-40:11 (agreeing resume is accurate); Ex. 4, Solis Resume). As Lead Operator, Solis worked in a Sanchez office each day to develop and submit production reports and do other paperwork for Sanchez. (Ex. 3, Solis Dep. at 81:3-5, 212:2-213:9). He did not submit these reports to Crescent. (*Id.* at 81:3-5).

Solis conceded that Crescent's only role was to provide billing services for the work he performed for Sanchez, stating as follows:

> **Q.    Okay. And the only thing Crescent has ever done for you in your -- during the time that you've been affiliated with them, is paid you when you submitted invoices, correct?**
>
> **A.    Yes.**

(Ex. 3, Solis Dep. at 50:15-51:5).  Because no one employed by Crescent has anything to do with the actual performance of the services Solis provided to Sanchez, it is not surprising that Solis admitted that he was neither supervised nor disciplined by any Crescent employee while he performed services on location for Sanchez. (Ex. 2 at ¶¶ 4, 11; Ex. 3, Solis Dep. at 27:5-11, 78:23-79:12, 147:20-22). Solis agreed that he did not contact Crescent about how to perform his job. (Ex. 2 at ¶17; Ex. 3, Solis Dep. at 50:22-51:5, 78:23-79:12, 147:20-22). During the entire three month period he contracted with Crescent, Solis only saw actual Crescent employees twice.[4] (Ex. 3, Solis,

---

[2] Ex. 3, Solis Dep. at 168:10-169:18; Ex. 6, Sanchez Driving Directions [*Solis Dep. Ex. 13*] at HOEFLEIN [Solis, R.] 105.

[3] Ex. 3, Solis Dep. at 111:2-5, 123:3-11, 170:1-172:15, 220:4-221:24; Ex. 7, Solis's Objections and Responses to First Set of Interrogatories at No. 14.

[4] While Solis contradicts his testimony at times and refers to Kevin Langen as his "supervisor" or "boss",

Dep. at 27:10-11). Nor did Solis receive any training or performance reviews from any Crescent employee. (Ex. 2 at ¶12; Ex. 3, Solis Dep. at 48:5-7, 101:1-5). Solis further admitted that Crescent did not provide him with any equipment or materials and that he used his own tools and vehicle at the worksite. (Ex. 2 at ¶13; Ex. 3, Solis Dep. at 48:8-17, 77:10-16). Solis testified that it was his "understanding that all expenses were to be paid by [him] and not Crescent. (Exh. 3, Solis Dep. at 122:16-18, Crescent did not provide uniforms, PPE, or other typical "employee" benefits to Solis, who instead purchased his own automobile and health insurance and PPE. (Ex. 2 at ¶¶14-15; Ex. 3, Solis Dep. at 48:5-17, 77:10-18, 117:4-21). Moreover, Crescent did not set Solis's schedule or otherwise dictate his hours. (Ex. 2 at ¶16; Ex. 3, Solis Dep. at 22:3-7). And it was Sanchez, not Crescent, that set Solis's rate of pay. (Ex. 3, Solis Dep.. at 94:12-96:7).   Solis testified that he was released from Sanchez projects by Sanchez employee Jeremy Nursement, with no involvement from Crescent, in December 2016. (*Id.* at 103:11-25).

### D.      As an Independent Businessman, Solis Maximized His Profits Through His Investment in His Company, Black Bull Oil and Gas Services LLC

To maximize his income and tax advantages, Solis created Black Bull Oil and Gas Services LLC, and he received payment of his invoices from Crescent through this entity going forward rather than as an individual 1099. (Ex. 3, Solis Dep. at 52:2-54:10, 112:16-21).  Solis chose to pay himself through Black Bull, necessitating the issuance of a W-2 and payment of employment taxes by Black Bull.[5] He made investments in his business, taking deductions of $15,170, $27,419, $68,018,

---

Solis admits that he does not have any evidence that Langen was a Crescent employee.  (Ex. 3, Solis Dep.at 24:1-6). Indeed, Solis testified that Langen was a Lead Operator just like him invoicing through Crescent.  (*Id.* at 24:17-22). In this regard, Solis testified that he and Langen would divide up with work (wells) and that Langen never drove with him or was present at the wells he worked on unless one of them finished early and would help the other one out.  (*Id.* at 157:14-158:18)

[5] Ex. 13, Tax Returns for 2016-2019 [*Solis Dep. Exs. 16, and 18-20*] at HOEFLEIN[Solis, R]0020.

and $53,877 from 2016 to 2019.  (Ex. 13, Tax Returns for 2016-2019 [*Solis Dep. Exs. 16, and 18-20*] at HOEFLEIN[Solis, R]0023-24, 0059-60, 0088-89).

Solis' compensation for his services was determined by Sanchez and ranged from $600/day to $650/day.  (Ex. 8, Solis ICA d/b/a Black Bull at pg. 3 [*Rate Sheet*]; Ex. 3, Solis Dep. at 94:13-96:7). Solis's pay increased from $600 to $650/day following a conversation with Jeremy Nursement at Sanchez, at which time he was informed that he was doing good work.  (*Id.* at 136:1-14).  Crescent had nothing to do with his increase in compensation for his services for Sanchez.  (*Id.* at 136:1-14). Solis, working through his entity Black Bull and the decisions he made, generated revenues of $19,500, $17,426, $9,580, and $10,200 from 2016 to 2019.  (Ex. 13 at HOEFLEIN[Solis, R]0023-24, 0059-60, 0088-89; Ex. 14, Joint Stipulation [ECF No. 178]).

Even after Sanchez Superintendent Jeremy Nursement terminated Solis from the Sanchez project and Solis stopped invoicing through Crescent (Ex. 3, Solis Dep. at 27:1-7), Solis found work at C&D and Cardozo Oil and Gas, working through Crosby, RAM Production, Blue Stone, and Swift Energy without Crescent's assistance, and his company, Black Bull, continued to be a going concern. (Ex. 3, Solis Dep. at 118:13-119:10, 173:22-25).  Indeed, Solis continued to operate and receive payment through Black Bull until February 2020, over three years after his relationship with Crescent ceased to exist.  (Ex. 3 at 54:14-55:13; Ex. 14 at ¶¶ 4-6).

## II.   LEGAL STANDARD

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Once the moving party [meets its initial burden], the nonmoving party must 'go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). "This burden will ***not*** be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

## III.    ARGUMENT

Crescent is entitled to summary judgment on Solis's FLSA claims because (1) Solis was an independent contractor and not covered by the FLSA, and (2) Solis's overtime claim is barred by the FLSA's two year statute of limitations because his relationship with Crescent ended on December 22, 2016, more than two years prior to the filing of this action on October 4, 2019.  As there is no evidence in the record sufficient to establish a willful violation, Solis cannot extend the statute of limitations from two years to three years in order to recover his overtime claim from October 4, 2016 to December 22, 2019.

### A.    Crescent is Entitled to Summary Judgment on Solis's FLSA Claim Because Solis was an Independent Contractor

Solis cannot establish that he is entitled to overtime under the FLSA because he cannot prove that his three-month relationship with Crescent was an employer-employee relationship. The undisputed facts show that Solis was an independent contractor.

The Fifth Circuit utilizes a "non-exhaustive" five-factor test—often referred to as the *Silk* factors—when determining whether an individual is an employee or independent contractor. *Parrish v. Premier Directional Drilling, L.P.,* 917 F.3d 369, 377 (5th Cir. 2019) (citing *United States v. Silk*, 331 U.S. 704 (1947)). These factors include: "(1) the degree of control exercised by

the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship." *Id.* No single factor is determinative, and the dispositive inquiry is whether the worker in question is, as a matter of economic reality, dependent on the putative employer or in business for himself. *Id.* The determination of whether Solis is an independent contractor or employee under the FLSA is a legal, not a factual finding. *See Parrish*, 917 F.3d at 377.

In *Parrish*, the Fifth Circuit found that four out of five factors weighed in favor of independent contractor status, reversed summary judgment, and rendered judgment in favor of the defendant. Here, <u>all five factors</u> weigh in favor of independent contractor status based on the overwhelming evidence, including Solis's sworn testimony establishing that he was in business for himself and was not dependent on Crescent in order to make a living.

### 1.      Crescent Did Not Exercise Any Control Over Solis

The first factor—the degree of control exercised by the alleged employer—weighs against finding an employment relationship and in favor of finding independent contractor status. *See Thibault v. Bellsouth Telecommunications, Inc.*, 612 F.3d 843, 846-47 (5th Cir. 2010). In analyzing the control factor, courts strongly consider whether the alleged employer controlled the details of the work performed by the worker because independent contractors work independently. *Id.*

The parties agree that Crescent's role was to provide billing services for the work he performed for the Operator, Sanchez. (Ex. 2 at ¶¶1-17; Ex. 3, Solis Dep. at 50:22-51:5). Because no one employed by Crescent has anything to do with the actual performance of the services Solis provided to Sanchez, it is not surprising that Solis admitted that he was neither supervised nor disciplined by any Crescent employee while he performed services on location for Sanchez. (Ex. 2 at ¶¶ 4, 11; Ex. 3, Solis Dep. at 27:5-11, 78:23-79:12, 147:20-22).

At his deposition, Solis unequivocally testified that no one at Crescent told him how to perform his duties as a Lead Operator. (*Id.* at 79:1-12). Nor was Crescent involved in meetings or discussions about Sanchez wells or in making reports to Sanchez engineers. (*Id.* at 146:17-147:22). Solis admitted that he "never called Crescent to ask them how to do [his] job," adding that he did not even know of anyone at Crescent who knew how to do the work of a pumper. (*Id.* at 79:9-12, 164:8-20). Solis further made clear that no one from Crescent was at the site or even in the same state where he worked. (*Id.* at 78:23-79:12). In fact, Solis agreed that he was "alone all day going from well to well, pad to pad, to each well." (*Id.* at 154: 14-16). During the entire three month period he contracted with Crescent, Solis only saw actual Crescent employees twice. (*Id.* at 27:10-11), and the only thing Crescent did was paid his invoices. (*Id.* at 50:22-51:1). Solis confirmed that he did not receive any training or performance reviews from any Crescent employee. (Ex. 2 at ¶12; Ex. 3, Solis Dep. at 48:5-7 (regarding training), 101:1-5 (regarding performance reviews)). Perhaps the fact that most underscores Solis's independence is that he received annualized compensation of over \$100,000 precisely <u>because</u> he was so experienced and did not need any supervision or control. (Ex. 3, Solis Dep. at 227:21-228:4).

Very similar facts were present in *Thibault* where the cable splicer was deemed to be an independent contractor because he decided how to perform his work and the alleged employer never specified how to do the splicing. Similarly, in *Carrell v. Sunland Const., Inc.*, 998 F.2d 330, 334 (5th Cir. 1993), the welder was found to be an independent contractor where he controlled the manner and details of his welds rather than the alleged employer. And, the Fifth Circuit, made clear in *Parrish,* that because "Premier did not dictate how plaintiffs completed the directional-drilling calculations" this was indicative of contractor status. *Parrish*, 917 F.3d at 381.

In addition to analyzing whether a plaintiff controlled the details and manner in which to perform his work when determining independent contractor status, courts also consider whether the plaintiff had the ability to turn down work.  *See Parrish*, 917 F.3d at 382 ("Regarding the work schedule, plaintiffs did have certain assigned shifts; but, they did not have to accept a project.") Here, like in *Parrish*, **Solis testified that he understood that he was free to accept or reject any job or project that Crescent offered him with any operator**. (Ex. 3, Solis Dep. at 126:13-19). Moreover, the Independent Contractor Master Service Agreement Solis entered into with Crescent specifically gave him the discretion to accept or reject jobs, stating that "*[s]hould you accept any assignment for the performance of work or services*" the MSA would govern. (Ex. 12, Solis ICA d/b/a R. Solis [*Solis Dep. Ex. 4]* at ¶ 1 (emphasis added). Accordingly, Solis's ability to accept or reject work is indicative of contractor status.  See, *Gate Guard Servs. L.P. v. Solis*, No. V-10-91, 2013 WL 593418, at *4 (S.D. Tx. Feb. 13, 2013) ("Gate attendants are free to reject assignments without penalty, and they do so for various reasons."); *Mack v. Talasek,* No. V-09-53, 2012 WL 1067398 at *2 (S.D. Tx. Mar. 28, 2012) (control factor weighed in favor of IC status where the workers could decline a request to work).

Finally, Solis's business continued to be a going concern after his relationship with Crescent terminated is strong evidence of the economic reality that he is in business for himself and not dependent on Crescent.  (Ex. 3, Solis Dep. at 53:22-55:5).  Indeed, since Solis stopped billing time through Crescent for his Sanchez work, Solis has found work through his own contacts at C&D and Cardozo Oil and Gas, working through Crosby, as well as RAM Production, Blue Stone, and Swift Energy without Crescent's assistance. (*Id*. at 118:13-119:10, 173:22-25).

Because Solis was not told how to do his job, was not trained, was not supervised on a day-to-day basis or at all, was able to reject jobs, and actively sought out and generated his own work

thereby displaying his economic independence rather than relying on Crescent, the control factor

falls conclusively on the side of independent contractor status. *See Parrish,* 917 F.3d 369, 382;

*Thibault*, 612 F.3d at 846-47; *Carrell*, 998 F.2d at 334.

### 2.      Solis's Investments Outweighed Crescent's Investments

The second factor—the extent of the relative investments of the worker and the alleged

employer—also weighs in favor of finding an independent contractor relationship, not an

employment relationship, between Solis and Crescent. This factor compares each worker's

investment to that of the alleged employer in the project or jobsite. *See Parrish*, 917 F.3d at 383

(examining the investments Premier made at each drill site where plaintiffs worked).[6]   It is

important to note that the Fifth Circuit in *Parrish* gave this factor little weight due to the nature of

the oil and gas industry, where the worksite is provided by landowners and operators.  *Parrish*,

917 F.3d at 383 ("[I]in this instance [we] accord this factor little weight, in the light of the nature

of the industry and the work involved."). As Solis worked in the oil and gas industry as well, it is

not to be given the same weight as the other factors.

Notwithstanding this, as between Crescent and Solis, Solis's relative investment is more

substantial than Crescent's because Solis testified that he purchased a truck, tools, PPE, office

supplies, and other equipment—in other words, everything that was necessary in order for Solis to

perform his job as a Lead Operator. (*Id.* at 48:14-23, 52:7-10, 77:10-78:21, 122:16-18). Crescent,

in contrast, did not even have a physical presence at the jobsite, and its only role with respect to

Solis's work for Sanchez was to provide billing services. (*Id.* at 50:15-51:5). Likewise, it was

---

[6] *Thibault*, 612 F.3d at 847 ("The Court in *Carrell* 'recognized' the overall investment by the alleged employer, but it did not focus on it, as Thibault does in his brief. Instead, *Carrell* compares the amount the alleged employer and employee each contribute to the specific job the employee undertakes"); *Clay v. New Tech Glob. Ventures, LLC*, 2019 WL 1028532, at *19 (W.D. La. Mar. 4, 2019) (analyzing relevant investments with respect to the "**specific job** the [alleged] employee undertakes.") (emphasis added).

Sanchez, not Crescent, that offered Solis a place to live while consulting. (*Id.* at 37:16-38:2). Crescent, therefore, had little if any economic investment in the job Solis undertook for Sanchez, and certainly a less substantial investment than Solis.

### 3.    Solis Controlled His Own Opportunity for Profit or Loss

The third factor is the degree to which the worker's opportunity for profit or loss is determined by the alleged employer.  Based on decisions Solis made regarding his compensation for his services to Sanchez and his choice to reduce his tax liability by working through his company, Black Bull, this factor weighs strongly supports independent contractor status.

In evaluating plaintiffs' opportunities for profit or loss, courts consider facts such as whether plaintiffs wrote off business expenses on their tax returns, and whether plaintiffs generated revenue from sources other than the alleged employer.  *Carrell*, 998 F.2d at 333 (focusing on "year-end profits or losses"); *Thibault*, 612 F.3d at 848 ("The splicers here increased profits by controlling costs (repairs, supply costs, food, water, housing, etc.)").  The *Parrish* court noted "evidence gleaned from tax returns can be useful" when determining the profits and loss factor and found losses from other businesses to be just as probative as profits. *Parrish*, 917 F.3d at 384.  Again, the profit/loss factor, like all other factors, must be evaluated in light of the ultimate question of economic independence. *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008) ("each factor is a tool used to gauge the economic dependence of the alleged employee, and each must be applied with this ultimate concept in mind").

The record in this case demonstrates that Solis had the opportunity to make decisions which affected his economic independence and ultimate year-end profits. Solis chose to create Black Bull—the company through which Crescent paid Solis, and which Solis continued to operate for more than three years after he stopped billing his time through Crescent—and took advantage of the tax benefits of deducting his business expenses. (Ex. 3, Solis Dep. at 55:2-5, 76:19-77:4,

112:16-21). For example, Solis made investments in his business, taking deductions of $15,170, $27,419, $68,018, and $53,877, respectively, from 2016 to 2019.  (Ex. 13 at HOEFLEIN[Solis, R]0023-24, 0059-60, 0088-89). Specifically, in his 2016 Schedule C Form associated with Black Bull, Solis deducted $4,290 in truck-related expenses, $7,500 in depreciation in the value of his truck, which he acquired in February 2016, $1,685 in cell phone costs, and $1,695 in uniform expenses.[7] Solis also unilaterally chose to pay himself through Black Bull, necessitating both the issuance of a Form W-2 and the payment of employment taxes by Black Bull. (Ex. 3, Solis Dep. 227:15-17, Ex. 13 at HOEFLEIN[Solis, R]0020).

Further, Solis received a Form 1099 from Crescent, related to consultant work he performed before he began receiving payment through Black Bull.[8] He admitted that he did not pay any taxes on the amount he received from Crescent. (Ex. 3, Solis Dep. at 236:6-237:1). Instead, he invested in tools (which he "bought brand new"), work boots, vehicle repairs, gas, meals, clothes, insurance, and a welding machine (totaling $24,806), and he deducted these amounts on his tax returns.[9] In other words, Solis could control his opportunity for profit or loss by choosing how much to spend on the equipment, and other expenses associated with running his business.

Solis earned revenues of $40,300, $17,426, $9,580, and $10,200 against investments of $39,176, $27,419, $68,018, and $53,877 from 2016 to 2019.  (Ex. 13 at HOEFLEIN[Solis, R]0023-24, 0059-60, 0088-89; Ex. 14, Joint Stipulation).  Solis primarily invested in depreciable property with a total amount of $93,681 from 2016 to 2019 and $4,290 in contract labor in 2016.  (Ex. 13 at HOEFLEIN[Solis, R]0027-28, 0062-63, and 0095-96). That said, all of these decisions concerning

---

[7] Ex. 3, Solis Dep. 52:6-10, 147:23-148:9, 225:7-227:2; Ex. 13 at HOEFLEIN[Solis,R]0023-24, 0028.

[8] Ex. 3, Solis Dep. 248:11-23; Ex. 13 at HOEFLEIN[Solis,R]0025-26 and 0031.

[9] Ex. 3, Solis Dep. at 149:10-22, 227:19-235:17; Ex. 13 at HOEFLEIN[Solis,R]0025-26.

investments in his business and whether he made a profit or suffered a loss were his decisions alone.

Also, Solis (not Crescent) was in charge of negotiations with Sanchez regarding his compensation.  Sanchez determined compensation for Solis, which ranged from $600/day to $650/day. (Ex. 12, Solis ICA d/b/a R. Solis [*Solis Dep. Ex. 4*]; Ex. 3, Solis Dep. at 96:4-7).  Solis's pay increased from $600 to $650/day following a conversation with Jeremy Nursement.  (*Id.* at 136:1-14).  Crescent had nothing to do with this increase in compensation.  (*Id.* at 95:8-16). Accordingly, this factor heavily favors independent contractor status.

### 4.    Solis is a Highly Skilled and Qualified Consultant

The fourth factor—the skill and initiative required in performing the job—supportscum independent contractor status given the high level of skill needed to be a Lead Operator, which required supervising others and managing 71 wells.

In determining whether an individual possesses the requisite skill and initiative favoring independent contractor status, courts look for "some unique skill set, or some ability to exercise significant initiative within the business." *Parrish*, 917 F.3d at 385; *see also Carrell*, 998 F.2d at 333 (finding independent contractor status where plaintiff exercised great skill in pipe welding). "Routine work which requires industry and efficiency is not indicative of independence and nonemployee status" and, as always, "the focus of this factor is linked to whether the worker was economically-dependent" on the putative employer. *Parrish*, 917 F.3d at 385-86.

Solis is a highly experienced individual who was a Lead Operator for a sizeable number of wells and pads.[10] He supervised six individuals and described his job duties as monitoring and maintaining well equipment, diagnosing issues when alarms went off, ensuring that the facility

---

[10] Ex. 3, Solis Dep. at 168:10-169:18; Ex. 6, Sanchez Driving Directions at HOEFLEIN[Solis, R.] 105 [*Solis Dep. Ex. 13*].

was operating at maximum efficiency, instructing subordinates what to do, and determining when Sanchez should be alerted about costly issues. (Ex. 3, Solis Dep. at 168:10-172:2). He agreed that his "main experience" was diagnosing what the problems were. (*Id.* at 171:20-172:2). He oversaw production site operations, supervised other production operators, coordinated with Sanchez, and tested and inspected production equipment, which required understanding complex instrumentation and the components of a production facility. (*Id.* at 220:4-221:24). Solis indicated that it was "never" as simple as turning a valve or tweaking the equipment, saying, for example, that he "literally [had to] go take things apart, figure out…[if] a clay-type jelly that forms around the well base itself or even down hole" was preventing pumping, and then coordinate a resolution. (*Id.* at 162:9-24). In fact, Solis conceded that his work as Lead Operator "require[d] a high level of skill and sophistication to do this job correctly and safely" (Ex. 3, Solis Dep. at 144:5-8).

Courts have found that high-stakes, complex work like that at issue here weighs in favor of independent contractor status under the fourth *Silk* factor. For example, in *Parrish*, the court recognized the "high-skill level" and "complicated work" required by individuals, such as directional drillers, working at well sites. *Parrish,* 917 F.3d at 386. Similarly, the *Carrell* court found "specialized skills" indicative of an independent contractor, for example, in the case of welders on a pipeline, where the stakes are higher and the margin for error smaller than other types of welding work. *Carrell,* 998 F.2d at 333. Likewise, it takes "specialized skills" to manage operations at a drilling site, coordinate and monitor the logistics of drilling, and to be prepared to diagnose any problems occur while drilling. *Parrish,* 917 F.3d at 386 (noting that Directional Drillers performed their tasks "using their own discretion").

In examining the initiative factor, the Court considers each Plaintiff's ability to generate revenues or profits through business initiative, such as by forming separate business entities and

affirmatively seeking work from alternative sources. *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1312 (5th Cir. 1976) (question is whether workers have "viable economic status that can be traded to other . . .companies").  To maximize his income and tax advantages, Solis created Black Bull Oil and Gas Services LLC on October 13, 2016, and he received payment of his invoices from Crescent through this entity going forward rather than as an individual 1099. (Ex. 3, Solis Dep. at 52:2-54:10, 112:16-21).  Solis chose to pay himself through Black Bull, necessitating both the issuance of a W-2 and payment of employment taxes by his entity.[11]   This evidences business initiative; he was sophisticated in investing in his own company, to take tax advantages *vis a vis* that company, and he attempted to earn a profit based on his investments in equipment, property and vehicles. And, Solis continued to operate and receive payment through Black Bull until February 2020, over three years after his relationship with Crescent ceased, illustrating continued viability of his business.  (*Id.* at 54:14-55:13; Ex. 14 at ¶¶ 4-6) Thus, this factor weights in favor of independent contractor status.

### 5.    Solis Worked on a Project-to-Project Basis with no Guarantee of Future Work

The fifth factor—permanency of the relationship—also favors independent contractor status. Fifth Circuit precedent establishes several relevant inquiries when evaluating the independent contractor/employee dichotomy under this factor. These include whether Solis "worked exclusively" for Crescent and whether the work was on a temporary, "project-by-project basis." *Parrish,* 917 F.3d at 387.

Solis worked for Sanchez through Crescent for **only** three months, after which Sanchez terminated him from the its project. (Ex. 3, Solis Dep. 103:11-20). Thereafter, because Solis admittedly was free to accept or reject Crescent projects and was not otherwise guaranteed work

---

[11] Ex. 13 at HOEFLEIN[Solis, R]0020.

(Ex. 3, Solis Dep. at 126:13-18), Solis then found work elsewhere on his own. (Ex. 3, Solis Dep. at 118:13-119:10, 173:22-25).  There is no dispute that Solis controlled the length of time and manner in which he provided services through Crescent, which is very strong evidence of an independent contractor relationship.[12]

Each of these facts support independent contractor status. *See, e.g.*, *Carrell*, 998 F.2d at 334 (holding welders were independent contractors because "[t]he Welders' relationship with [the alleged employer] was on a project-by-project basis, the Welders worked from job to job and from company to company; many of the Welders spent little time working for [the alleged employer].");  *Thibault*, 612 F.3d at 846 (finding a plaintiff who "did not work exclusively for defendants," and "traveled from job-to-job and from state-to-state looking for work," was an independent contractor); *Gate Guard*, 2013 WL 593418 at *10-11   (finding workers were independent contractors where they "were hired on a job-by-job basis….");  *Mack*, 2012 WL 1067398 at *4-6 (same).

### 6.   Solis and Crescent Executed an Independent Contractor Agreement

Solis and Crescent expressly agreed in writing that they were entering into an independent contractor arrangement, and not one of employment. (Ex. 8 at ¶ 2) ("**Independent Contractor.** It is expressly understood that You will perform work or services hereunder as an independent contractor..."). The parties' intent and understanding of the nature of their relationship is relevant to determining whether the worker is an independent contractor. *See Carrell*, 998 F.2d at 334. Indeed, as the Fifth Circuit held in *Parrish*, where evidence "affects the objective economic reality of workers, as opposed to merely subjective viewpoints," it is relevant to the independent

---

[12] Critically, even if an individual works through only one alleged employer, this does not sway the balance in favor of employee status when such an individual possesses "such a valuable skillset show[ing] how the permanency of the relationship may, in reality, be not all that permanent." *Parrish,* 917 F.3d at 387.

contractor determination. *Parrish*, 917 F.3d at 388. The legal document to which both Crescent and Solis adhered did not just "affect" objective economic reality, it *created* the economic reality of an independent contractor relationship—one that left Solis free to accept or decline work, and to perform the work he did accept without Crescent's supervision or direction. Solis's deposition testimony demonstrates that he clearly understood the difference between being a W-2 employee of a company and being a third-party independent contractor who received IRS Form 1099s. (Ex. 3, Solis Dep. at 42:21-45:20). This understanding and the existence of a written contract between the parties weighs in favor of independent contractor status. *See Thibault, supra*, 612 F.3d at 845-46 (noting that the contractual designation of a worker as an independent contractor is relevant).

### 7.    Industry Standard

The court may also consider that it is customary in the industry for certain kinds of workers to be independent contractors because this informs the economic reality of the relationship. *See Gate Guard*, 2013 WL 593418 at *11-12. "[T]the Fifth Circuit has stated that courts must make allowances for those operational characteristics that are unique or intrinsic to the particular business or industry, and to the workers they employ." 2013 WL 593418 at *12. "To the extent the industry standard affects the objective economic reality of workers . . . it is best considered as a part of the other *Silk* factors." *Parrish*, 917 F.3d at 388.

In this case, the inherent volatility and boom/bust nature of the oil industry, combined with the high level of skill required to do the kind of production work operators such as Sanchez require, make it necessary for Crescent to have the flexibility to engage independent contractors to satisfy the project-specific needs of its customers. The same volatility makes it necessary for workers like Solis to be free to seek work from any source they choose, rather than depending on a single source of income. Accordingly, industry standard and custom further supports a finding that Solis is an

independent contractor. *Parrish*, 917 F.3d at 388 (noting the relevance of oilfield industry standards).

For all of these reasons, the *Parrish* case is binding precedent that firmly establishes that Solis's claims of independent contractor misclassification are entirely without merit.

**B.**   **Solis's FLSA Claims are Time-Barred Because They Accrued More Than Two Years Before His Complaint was Filed**

FLSA overtime claims are subject to a two-year statute of limitations. 29 U.S.C. § 255(a). "A cause of action accrues at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." *Halferty v. Pulse Drug Co.*, 821 F.2d 261, 271 (5th Cir. 1987). Employees may not seek wages for violations prior to the statute of limitations period. *Hendrix v. Yazoo City*, 911 F.2d 1102, 1103 (5th Cir. 1990).

Solis did not file his Complaint until October 4, 2019, well over **two years** after he last contracted through Crescent on December 22, 2016. (Ex. 9, Original Complaint [ECF No. 1] and Ex. 10, Notice of Filing Notice of Consent [ECF No. 3].) Solis did not contract through Crescent at any time during the two years prior to his filing this action, so *he has no claim within the applicable statute of limitations*.

**C.**   **The Three-Year Limitations Period Does Not Apply Because Solis Cannot Carry His Burden of Showing a Willful Violation of the FLSA**

While Solis contracted with Crescent for three months in total, only two and a half months fall within the third year of the limitations period (from October 4, 2019 to December 22, 2019). (Ex. 11, Solis's Objections & Answers to Crescent's Second Set of Interrogatories at Response No. 2; Ex. 3, Solis Dep. at 27:12-14). However, Solis cannot salvage even that claim because he cannot show that Crescent willfully violated the FLSA.

"The burden of showing that an FLSA violation was "willful" falls on the plaintiffs." *Stokes v. BWXT Pantex, L.L.C.,* 424 F. App'x 324, 326 (5th Cir. 2011). Willfulness has been found when the evidence demonstrated that an employer actually knew its pay structure violated the FLSA or ignored complaints that were brought to its attention. *See Ikossi–Anastasiou v. Bd. of Supervisors of La. State Univ.,* 579 F.3d 546, 553 n. 24 (5th Cir.2009). Moreover, "to show reckless disregard of the FLSA, an employee must show that the employer had some reason to know that its conduct violated the FLSA beyond mere ignorance of the law."[13] A violation may also be willful if the employer has previously been put on notice that its practices violated the statute.[14]

Solis has not, and cannot, point to any evidence that Crescent knew that it was violating the FLSA or recklessly disregarded a potential violation. Indeed, Solis admitted that he did not complain or otherwise put Crescent on notice that he was entitled to overtime. (Ex. 3, Solis Dep. at 101:6-10). The lack of any evidence about such a complaint totally undermines Solis's claim of a willful violation. For example, in *Villegas v. Dependable Const. Serv. Inc.,* No. 07-cv-2165, 2008 WL 5137321, at *26 (S.D. Tx. Dec. 8, 2008), the Court found no willful violation in part because "none of the Plaintiffs complained to [the alleged employer] that they should receive overtime compensation". Other courts have granted summary judgment on the issue of willfulness where a plaintiff admitted that she had never complained about her pay. *Martin v. PepsiAmericas, Inc., No. 1:07cv91-SA-JAD, 2008 WL 4755394, *5 (N.D. Miss. Oct. 28, 2008); see additionally Ikossi-Anastasiou v. Board of Supervisors*, 579 F.3d 546, 553 (5th Cir. 2009) (affirming summary judgment where plaintiff lacked evidence of a willful violation and claims accrued more than two years before suit was filed).

---

[13]     *Mohnacky v. FTS Int'l Servs., LLC*, No. SA-13-CV-246-XR, 2014 WL 4967097, *6 (W.D. Tex. Oct. 2, 2014) (citing *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990)).

[14]     *See Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir. 1994).

## IV.     CONCLUSION

Based on this undisputed record, Crescent is entitled to summary judgment on all of Solis's FLSA claims.  Solis's own sworn testimony makes clear that he was an independent contractor and that his claims are time-barred and must be dismissed.

Respectfully submitted,

**SEYFARTH SHAW LLP**

By: /s/ Kathryn C. Palamountain
Annette A. Idalski
Texas Bar No. 00793235
S.D. I.D. No. 1130754
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, GA  30309
Ph:  (404) 885-6698
Fax:  (404) 724-1649
aidalski@seyfarth.com

Kathryn C. Palamountain
700 Milam Street, Suite 1400
Houston, Texas  77002
Ph:  (713) 225-2300
Fax:  (713) 225-2340
cpalamountain@seyfarth.com

*COUNSEL FOR DEFENDANTS*

## <u>CERTIFICATE OF SERVICE</u>

I, do hereby certify that I have caused a true and correct copy of the foregoing document to be served upon the following by filing the same with the Court's CM/ECF electronic filing system on this 27th day of July 2022:

Richard J. (Rex) Burch
David J. Moulton
BrucknerBurch PLLC
8 Greenway Plaza, Suite 1500
Houston, TX 77046
rburch@brucknerburch.com
dmoulton@brucknerburch.com


Michael A. Josephson
Andrew W. Dunlap
Richard M. Schreiber
Josephson Dunlap LLC
11 Greenway Plaza, Suite 3050
Houston, TX 77046
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

/s/ Kathryn C. Palamountain
Kathryn C. Palamountain